## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW JOHN JENNER, | : | NO. 3:23-CV-1087 |
| Plaintiff, | : | |
| | : | (MUNLEY, D.J.) |
| v. | : | |
| | : | (CAMONI, M.J.) |
| TROOPER GREGORY PIMM, *et al.* | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

Matthew John Jenner brought this *pro se* action against Pennsylvania State Troopers for injuries sustained during an arrest. Jenner has failed, however, to prosecute his case despite numerous opportunities from this Court to do so. After careful consideration, the undersigned recommends dismissal.

### II.   BACKGROUND

Plaintiff Jenner filed his Complaint on June 29, 2023, at which time he was an inmate at SCI Rockview. Doc. 1. Jenner asserted civil rights violations through 42 U.S.C. § 1983 against Pennsylvania State Police Troop F-Force and three State Troopers—Gregory Pimm, Blade Bernosky, and Jacob Burgess—alleging "aggravated assault" and "police

brutality." Doc. 1 at 1-3. In his Complaint, Jenner alleged that, on January 28, 2022, the defendants assaulted and injured him while arresting him, pursuant to a warrant, at a friend's house in Laceyville, Pennsylvania. Doc. 1 at 5-7. He sought "punitive damages" for pain and suffering, stating that he was "asking for a million or reasonable offer in dollars." Doc. 1 at 8.

This Court granted Jenner's application for leave to proceed *in forma pauperis* ("IFP") on July 27, 2023. Doc. 7. Defendants moved for a more definite statement on September 29, 2023. Doc. 23. This Court directed Jenner to either amend his complaint or file a brief in opposition to defendants' motion. Doc. 26. On October 23, 2023, Jenner filed an amended complaint. Doc. 29.

Jenner's amended complaint set forth substantially the same factual allegations, this time in numbered paragraphs, and added a few clarifying details. Jenner now seeks damages of $1 million from each Trooper and from Troop P-Force for "police brutality, aggravated assault, [and] unnecessary force" that caused "pain and suffering, low self-esteem from the scars, flashbacks, nightmares of that night, and

headaches." *Id.* at 3. The defendants filed a timely Answer (Doc. 31), and discovery commenced.

On December 15, 2023, Pennsylvania State Police Troop P-Force filed for Judgment on the Pleadings (Doc. 40), which United States Judge Julia K. Munley granted on July 31, 2024 (Doc. 62), leaving only the three individual Troopers as defendants. Meanwhile, the defendants filed a Motion for Summary Judgment on June 20, 2024. Doc. 54.

This Court directed Jenner to file a brief in opposition by July 11, 2024, which he did not do. The deadline was stayed and extended several times on the Court's own motion to give Jenner an opportunity to file a brief. Docs. 57, 63, 67, 68, 76, 78. On September 19, 2024, Jenner filed a "Statement of Facts" that did not respond to Defendants' statement of facts (Doc. 56) and still failed to file a brief in opposition. Doc. 65. After several further *sua sponte* extensions of time, the Court afforded Jenner one last opportunity to file a brief in opposition, setting a deadline of February 6, 2025. Doc. 78. The Court, as it had previously, admonished Jenner that failure to file a brief and responsive statement of facts that complied with Local Rules 7.8 and 56.1 may result in Defendants' statement of facts being deemed admitted and dismissal of

his case pursuant to Fed. R. Civ. P. 41. *Id.* The Court advised that "No further extensions of time to respond to Defendants' Summary Judgment Motion will be granted absent a showing of good cause." *Id.* Jenner failed to comply with that Order, and, to date, has failed to file a brief in opposition or a responsive statement of facts.

### III.  ANALYSIS

Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action for "failure of the plaintiff to prosecute or comply with these rules or order of court." Fed. R. Civ. P. 41(b). Federal courts have "inherent power" to dismiss an action sua sponte based upon a plaintiff's failure to prosecute. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see also R & C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC*, 45 F.4th 655, 661 (3d Cir. 2022) (stating that "[c]ourts possess inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" and that "[t]his includes the authority to dismiss a case for lack of prosecution"). Dismissal of an action under Rule 41(b) lies within the sound discretion of the district court and will not be disturbed absent an abuse of discretion. *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002) (citation omitted).

A district court may exercise the power to dismiss a case under Rule 41(b) for failure to prosecute notwithstanding the plaintiff's pro se status. The Sixth Circuit has stated that "while pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991). Thus, a pro se litigant's failure to prosecute does not equate to "inartful pleading or [a] lack of legal training." *Id.* at 110; *see also Makozy v. UPS*, No. 24-13649, 2025 U.S. App. LEXIS 16614, *4 (11th Cir. July 8, 2025) (plaintiff bound to comply with the Rules and with court orders, "even as a pro se party").

When determining whether to dismiss a case for failure to prosecute under Rule 41(b), the court must balance the factors set forth in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984). These factors include:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of

> alternative sanctions; and (6) the meritoriousness of the claim or defense.

Id. at 868. Not all of the *Poulis* factors must be satisfied in order for a court to dismiss a complaint. *See Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992).

The *Poulis* factors all weigh in favor of dismissing this case. First, as a *pro se* litigant, Jenner bears personal responsibility for his failure to comply with the court's orders. *Emerson v. Thiel Coll.*, 296 F.3d at 191; *see also Briscoe v. Klaus*, 538 F.3d 252, 258-59 (3d Cir. 2008) ("[I]t is logical to hold a pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely responsible for the progress of his case . . . .").

Second, Jenner's failure to respond to the motion for summary judgment and the defendants' statement of facts causes prejudice to defendants by delaying resolution of the case. *Manuel v. Harry*, No. 1:20-CV-2309, 2021 WL 602723, at *3 (M.D. Pa. Feb. 16, 2021). Third, Jenner has shown a history of dilatoriness by failing to file the required brief in response and responsive statement of facts by the court-imposed deadline five times. *Id* at *4; *see* Docs. 57, 63, 67, 68, 76, 78. Defendants filed their

motion in June 2024. Fourteen months have passed—and Jenner has still not responded.

The fourth *Poulis* factor—whether plaintiff's conduct was willful or in bad faith—also weighs in favor of dismissal. His failure to abide by court orders demonstrates a willful disregard for procedural rules and court directives. The Court's Briefing Orders requiring Jenner to respond warned that failure to file a brief in opposition may lead to his case being dismissed for failure to prosecute pursuant to Rule 41 of the Federal Rules of Civil Procedure. Docs. 63, 78. The Court can only conclude that Jenner's failure to respond was a deliberate choice. *See Dickens v. Danberg*, 700 F. App'x. 116, 118 (3d Cir. 2017) (approving district court finding that pro se plaintiff's failure to participate was willful because "[o]nly he can take steps to prosecute the case."). Indeed, Jenner has sent numerous letters and other documents to the Court regarding his IFP status and address changes, demonstrating that he could file a brief but chooses not to. *See* Docs. 72, 73, 77, 79, 80, 81. Accordingly, the the fourth factor weighs in favor of dismissal.

Likewise, the fifth factor, the effectiveness of sanctions other than dismissal, militates in favor of dismissal. Jenner lacks the ability to pay

Page 7 of 12

a financial sanction as an IFP litigant, and the court is without any viable alternative to dismissal. *See Lopez v. Cousins*, 435 F. App'x 113, 116 (3d Cir. 2011); *Dickens*, 700 F. App'x at 118; *Nowland v. Lucas*, No. 1:10-CV-1863, 2012 WL 10559 at *6 (M.D. Pa. Jan. 3, 2012) ("This case presents such a situation where the plaintiff's status as a pro se litigant severely limits the ability of the court to utilize lesser sanctions to ensure that this litigation progresses in an orderly fashion."). And, as discussed, the Court warned Jenner more than once that dismissal may result if he failed to file his brief. Despite those warnings, Jenner failed to respond to the Court's prior orders, giving rise to an inference that further orders would not be effective. *See Makozy* 2025 U.S. App. LEXIS 16614, *9 (failure to follow multiple orders suggests pro se plaintiff would not comply with a lesser sanction). Accordingly, the undersigned finds that the fifth factor weighs in favor of dismissal because no other sanction would be effective.

The sixth and final factor, the meritoriousness of Jenner's claim, also weighs in favor of dismissal. As the Court previously advised Jenner, under Local Rule 56.1, "All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing

party." Jenner failed to file a statement of facts responsive to the defendants' statement, and so the Court deems defendants' statement of facts (Doc. 56) to be ADMITTED. Thus, according to the undisputed facts, when the Trooper Defendants arrived at the home of Frank Rought on January 28, 2022, to serve a warrant of arrest and a protection from abuse order on Jenner, Rought advised that "Jenner was high on drugs, in possession of a knife, and would fight if discovered." Doc. 56 ¶ 1-3, 6-9. Jenner admitted that he heard officers searching for him, and so hid in the closet. *Id.* ¶ 16-17; *see also* docs. 1 at 5; 29 at 2. Jenner further admitted, during deposition, that he was indeed under the influence of methamphetamine at the time. Doc. 56 ¶ 18; n.19. When Troopers found him hiding in the closet, Jenner held something in his right hand, which, based on the warning from Rought, they believed to be a knife. *Id.* ¶ 19. Jenner failed to comply with commands to show himself with hands raised and had to be pulled from the closet. *Id.* ¶ 20-22. Troopers forced him to the floor, but his right hand, with the suspected knife, lay beneath his body, and he refused commands to place it behind his back. *Id.* ¶ 22-23, 25. Troopers stunned Jenner twice with a taser while instructing him to place his hands behind his back. Jenner continued to conceal his right

hand beneath him, so Troopers struck him with the end of the taser. *Id.* ¶ 26-30, n. 30, 31. When Jenner finally complied and placed his hands behind his back, he was cuffed, and the Troopers stopped using force. *Id.* ¶ 31-33. Jenner later pleaded guilty to resisting arrest in connection with this incident. In doing so, he admitted that "with the intent of preventing [Defendant] Pimm from serving an arrest warrant, [he] did creat[e] a substantial risk of bodily injury to [Defendant] Pimm by forcibly resisting being placed in handcuffs[,] requiring substantial force to overcome[.]" *Id.* ¶ 40.

The admitted facts contradict Jenner's claims that officers used excessive force or committed "aggravated assault" against him. The facts undermining Jenner's § 1983 claims are particularly persuasive given that many come from Jenner's own admissions during his deposition and guilty plea. Jenner admitted that he created a risk of bodily injury to the Trooper arresting him and that his own forcible resistance necessitated the Troopers' use of force. Thus, the sixth factor of the *Poulis* test also weighs in favor of dismissal.

Upon balancing the *Poulis* factors, the Court finds that they weigh heavily in favor of dismissal. Considering plaintiff's failures to comply

with court orders and lack of prosecution, the Court should dismiss this action with prejudice. *See Briscoe*, 538 F.3d at 258 (3d Cir. 2008) ("Federal Rule of Civil Procedure 41(b) permits a District Court to dismiss a plaintiff's case for failure to prosecute."); *Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 177 n.3 (3d Cir. 2021) ("District courts have authority under Rule 41(b) of the Federal Rules of Civil Procedure to dismiss claims with prejudice for failure to comply with a court order.").

## IV. RECOMMENDATION

Accordingly, the undersigned respectfully recommends that:

(1) This case be **DISMISSED** with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure;

(2) Defendant's Motion for Summary Judgment (Doc. 54) be DEEMED MOOT; and

(3) The Clerk of Court be DIRECTED to CLOSE this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being

served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Date: August 18, 2025                                s/Sean A. Camoni
                                                     Sean A. Camoni
                                                     United States Magistrate Judge